VIRGINIA-CAROLINA CHEMICAL CO. v. KIRVEN.

1. NEW TRIAL.—Where a defendant by his pleadings and evidence admits a liability in part to plaintiff, and jury finds for defendant generally, it is duty of trial Judge to grant a new trial, whether such admission were called to his attention and that of jury during trial or not.
2. IBID.—Where a verdict might be sustained by any possible view of the evidence, and trial Judge refuses to set it aside, this Court has no power to interfere.
3. IBID.—ADDITIONAL GROUNDS.—Order refusing new trial in law case cannot be sustained on additional grounds urged by respondent.

Before GAGE, J., Darlington, February, 1901.   Reversed.

Proceeding under agricultural lien by Virginia-Carolina Chemical Company against J. P. Kirven.   Verdict for defendant.   From order refusing new trial, plaintiff appeals.

*Messrs. Willcox & Willcox, Mitchell & Smith* and *W. F. Dargan,* for appellant.   *Messrs. Willcox & Willcox* cite: *This Court will review errors of law in refusing new trials:* 36 S. C., 586.   *Judge should set aside a verdict if there be no evidence to support it:* 57 S. C., 289; 23 S. C., 231; 49 S. C., 454; 52 S. C., 371; 54 S. C., 599; 58 S. C., 215.   *Respondent's additional grounds cannot be sustained:* 59 S. C., 508; 23 S. C., 105; 16 S. C., 1.

*Messrs. Geo. W. Brown, Woods & Macfarlan* and *Stevenson, Matheson & Rankin,* contra.   *Messrs. Woods & Macfarlan* cite: *Judge's attention should have been called to issue now urged by plaintiff:* 58 S. C., 223; 57 S. C., 332, 468; 59 S. C., 440, 163.   *Same rule applies to misstatement of evidence:* 35 S. C., 459; 57 S. C., 335.   *Refusal of new trial here does not involve error of law:* 58 S. C., 213.   *Damages may be set up by way of defense:* 43 S. C., 63; 15 S. C., 460; 10 S. C., 185; 15 Rich., 229.   *Lien to plaintiff was not valid:* 14 S. C., 476; 33 S. C., 237.   *This Court will not review evidence:* 18 S. C., 570; 57 S. C., 402.

*Messrs. Stevenson & Matheson,* also contra, cite: *Motion addressed to discretion of Judge, and his order is final:* 58 S. C., 214.   *Court's attention should have been called to plaintiff's contention during trial:* 48 S. C., 249; 59 S. C., 440; 58 S. C., 227; 57 S. C., 467.   *No ground for new trial that Judge does not agree with jury:* 57 S. C., 289; 59 S. C., 268; 53 S. C., 215.   *As to additional grounds by respondent:* 23 S. C., 105; 59 S. C., 508.   *Plaintiff had no lien by assignment:* 3 S. C., 50; Bliss on Code Plead., sec. 370; 22 Wood, 155; 2 Hill, N. Y., 171; 1 Id., 484; 4 Metc., 464; 13 Ala., 587; 4 N. E. R., 678; 10 L. R. A., 378.   *As to encoupment by pleading damages:* 22 L. R. A., 544; 30 S. C., 126; 45 S. C., 111.

February 9, 1903.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   The appeal herein is from an order refusing a motion for a new trial.   The issues are thus stated in the record: "This appeal is in a special proceeding arising under the provisions of section 2517 of the Revised Statutes.   A warrant to seize crop was issued by the clerk of the Court for Darlington County, under an affidavit in which it was claimed that the amount due under the agricultural lien was $2,298, with interest thereon at seven per cent. from the 25th day of October, 1898, and 85 cents protest fees. Under this warrant, crops of the appellant, J. P. Kirven, were seized by the sheriff of Darlington County and sold, bringing the sum of $693.35.   Within thirty days after the sale, the following notice and affidavit was served on the sheriff and then filed with the clerk of the Court for Darlington County:

"To G. P. Scarborough, Sheriff of Darlington County: Please take notice that the defendant, J. P. Kirven, as will be seen by the affidavit hereto attached, claims that the amount called for by the warrant and papers in the above proceeding to seize crop is not justly due.   J. P. Kirven."

"*Affidavit.*—Personally appeared before me, J. P. Kirven,

who, being duly sworn, deposes and says that, under the
above stated proceeding, the sheriff of Darlington County
having seized thirty bales of cotton belonging to this depo-
nent, has sold the same and holds the proceeds, and that
thirty days have not elapsed since the said sale.    That the
amount claimed by the plaintiff in the said proceeding as
bound by the lien claimed by him is not justly due.    That on
the 17th day of February, 1898, deponent bought from the
Virginia-Carolina Chemical Company, through its agent, S.
M. McCall, 171½ tons of fertilizers, at the price of $2,298,
and that on the 14th day of March, 1898, deponent gave his
note to the said agent for the purchase money of the said fer-
tilizers, and executed an agreement with him for an agricul-
tural lien upon all the crops to be raised upon his home place
in Darlington County during the year 1898, to secure the
same.    That the said fertilizers, 125½ tons, of the value of
$1,730, were delivered to plaintiff before the execution of
said agreement of lien, and under the statutes of the State of
South Carolina providing for agricultural liens are not co-
vered by said agreement of lien.    Forty-six tons, in value
$567.75, constituted advances made after the execution of
the agreement of lien and are affected by it.    Deponent
further says that the indebtedness claimed to be secured by
the said agreement of lien was contracted as follows : That on
or about the 17th day of February, 1898, deponent purchased
from the Virginia-Carolina Chemical Company, which is a
corporation incorporated under the laws of the State of New
Jersey, and having for its business the manufacture and sale
of commercial fertilizers, 171½ tons of commercial fer-
tilizers as follows : Seventy-four tons of dissolved bone, at
$10.50 per ton ; 7 tons of acid phosphate, at $10.25 per ton ;
35 tons of National Special Tobacco Fertilizer, at $20 per
ton, and 55½ tons of kainit, at $13.50 per ton, making the
price for the whole $2,298, for which, according to under-
standing, deponent gave his note and entered into the afore-
said agreement of lien.    That the said fertilizers were sold to
deponent as skillfully manufactured and well fitted in every

way to fertilize and increase the production of the crops on which they were to be used. That of the said fertilizers, the dissolved bone, acid phosphate and special tobacco fertilizer had been manufactured with such gross negligence and want of skill, that instead of being of any advantage to the crops to which they were applied, they destroyed the same in large part, and there was entire failure of consideration to deponent for the said fertilizer so purchased. J. P. Kirven.

"Sworn to before me this 17th day of January, A. D. 1899. W. Albert Parrott, Clerk of the Court D. C. (Official seal.)"

The jury returned a verdict in favor of the defendant, whereupon the plaintiff made a motion on the minutes of the Court for a new trial on the following grounds:

"I. Because it was admitted in the pleadings and testimony that plaintiff had advanced to the defendant thirteen tons of kainit, at the price of $175, and there was no contention that as to the kainit there was failure of consideration, or that the same was worthless or had injured the crop. On the contrary, the defendant stated that there was no contention against the kainit, and yet the jury found nothing for the plaintiff, the contention being that the plaintiff on defendant's admission was at least entitled to a verdict of $175, and that the failure to give such verdict was absolute ground for a new trial.

"II. Because there was a total absence of testimony to support the verdict, in that there was no testimony going to show that the fertilizer was improperly manufactured, or manufactured with gross negligence or want of skill, or that it was of no advantage to the crops, or that it destroyed defendant's crop, or that there was a failure of consideration. There was no testimony beyond, because the fertilizer was used in point of time previous to the damage, assuming the cause to produce the effect without proof, and because the plaintiff introduced uncontradicted testimony as to the actual cause showing defendant's contention impossible."

In refusing the motion, his Honor said: * * * "The issue

betwixt the parties was tried pursuant to the proviso of section 2517 of the Rev. Stat. 1893. I regard the affidavit of the defendant made pursuant to that proviso as the pleading in the case. It appears therefrom that of the 171½ tons of fertilizers sold by the plaintiff to defendant, 125½ tons, worth $1,730.25, were delivered before a lien therefor was executed, and 46 tons, worth $567.75, were delivered after the lien therefor was executed. It also appears therefrom that of the fertilizer so sold, 74 tons were dissolved bone, 35 tons were tobacco fertilizer, and 55 tons were of kainit, and worth $749.25. It also appears therefrom that the bone and tobacco fertilizer were worthless, and destroyed the crops. The testimony of the defendant was that the kainit was free from complaint, and the other fertilizers were worthless. The plaintiff demands a new trial, because it was at least entitled to pay for the kainit which defendant received after the 14th day of March, 1898, the date of the execution of the lien. The plaintiff first testified that he thought all the kainit was delivered to him before the lien was made, but he afterwards testified that an affidavit made by him on 30th December, 1898, was correct, and by that affidavit it appears defendant received 13 tons of kainit after the lien was made, and that it was worth $176.50. This matter has perplexed me very much, but I cannot set aside the verdict. The plaintiff's counsel only claimed a verdict for the price of those fertilizers delivered to defendant after the execution of the lien, to wit: $567.75; he made no request to charge, and the only issue submitted to the jury was, the amount 'justly due' for the 46 tons received by defendant after the execution of the lien. It was not drawn to my attention or to the attention of the jury during the trial that defendant had received 13 tons of kainit, worth $176.50, which he admitted was received after the lien was made, and admitted to be valuable. I first heard of the contention on the motion for a new trial. And this is the only reason I have to refuse the motion for a new trial. The defendant's counsel contended in argument, that the affidavit of defendant framing the

issue, alleged that the fertilizer destroyed his crops; and the
defendant's testimony was to the effect he had been damaged
thereby $10,000; and though defendant could not in this
action set up a counter-claim for such damages, he could
plead them in defense, and defeat plaintiff's action.    I do not
see my way clear to concur in that view.

"I cannot grant the motion on the other ground urged by
plaintiff, to wit: that the verdict was against the clear pre-
ponderance of the testimony.    It is not clear to my mind
what agency injured defendant's cotton—whether it was an
ingredient in the plant food or bacteria external to the plant
life.    Practical observation was arraigned on one side and
the voice of science on the other.    It was an issue for a jury.
The motion for a new trial must be refused."

The appellant's first exception is as follows: "I. His
Honor erred in not granting a new trial on motion of plain-
tiff, for the reason that the jury found nothing for plaintiff.
(a) Because it was undisputed in the pleadings and
testimony that the plaintiff had advanced to the de-
fendant after the date of the lien thirteen tons of
kainit at the price of $175.50, and neither in the pleadings nor
in the testimony was there any contention that as to this kainit
there was a failure of consideration, either that the kainit was
worthless or had injured the crop.    On the contrary, the
defendant had admitted in the testimony that he made no
claim against the kainit.    (b) In refusing the motion for
new trial on this ground, his Honor erred in holding that it
was not called to his attention, 'that defendant had received
thirteen tons of kainit, $176.50, which he admitted was
received after the lien was made, and admitted to be valu-
able;' for in this statement (which his Honor alleges is the
only reason for not granting a new trial) he overlooked the
admission of defendant in testimony and in pleadings to the
effect that that he found no fault with the kainit, and that
these admissions were frequently brought to the attention
of the Court and jury, and emphasized by counsel and wit-
ness.    (c) In refusing motion for a new trial on this

ground, his Honor erred in holding that it was necessary for counsel to have called to the attention of the Court or jury a fact in the case as a condition precedent to granting plaintiff its rights by a new trial, and in holding that plaintiff's right to recover for that which was admitted in the pleadings and testimony depended upon counsel calling the same to the attention of the Court and jury, when the Court and jury had heard the pleadings and testimony which gave full information of the fact." The facts set forth in assignment of error "a" are correctly stated. A verdict is erroneous when it is not responsive to the issue made by the pleadings, or when it is unsupported by·the testimony when viewed in every light. The pleadings showed that the defendant was due the plaintiffs $567.75 for fertilizers advanced after the execution of an agricultural lien, unless the defense was sustained, "that of the said fertilizers the dissolved bone, acid phosphate and special tobacco fertilizer had been manufactured with such gross negligence and want of skill, that instead of being of any advantage to the crops to which they were applied, they destroyed the same in large part, and there was an entire failure of consideration to deponent for the said fertilizer so purchased." The defendant did not contend that this defense was applicable to the kainit; on the contrary, in his testimony, he stated that the kainit was all right, and that he did not make any complaint about it. The defendant also testified that thirteen tons of kainit, of the value of $13.50 per ton, were advanced to him after the execution of the lien aforesaid. The verdict, therefore, did not respond to the issues made by the pleadings, nor was it supported by any view of the testimony. His Honor entertained this opinion, but refused the motion solely on the ground that it was not drawn to his attention or to the attention of the jury, during the trial, that the defendant had received thirteen tons of kainit, worth $176.50, which the defendant admitted was received after the lien was executed and admitted to be valuable. It is well settled in this State, that when a Circuit Judge is in error in stating the issues raised by the

pleadings, it is the duty of the party intending to rely upon such error as a ground of appeal, to call the attention of the Judge to such error; but he is not bound to bring to the attention of the Judge the testimony introduced in support of the issues. In his charge, his Honor said: "I charge you, gentlemen, that the only issue for you is that raised by this statement in Mr. Kirven's affidavit, 'That of the said fertilizers, the *dissolved bone, the acid phosphate, the special tobacco fertilizer* had been manufactured with such gross negligence and want of skill, that instead of being any advantage to the crops to which they were applied, that they destroyed the same in a large measure, and that there was an entire failure of consideration to deponent for said fertilizers so purchased' (italics ours). Now the single issue for you is: is that statement correct, so as to wipe out the liability of Kirven for $567.75, the price of the forty-six tons got after the lien was made? That is the issue. That is an issue for you and for you only. I cannot settle it; I cannot invade that territory. I charge you this, that if the forty-six tons of fertilizer, worth $567.75, gotten by Kirven after he had made the lien, were utterly worthless—in the language of this affidavit, 'so unskilfully manufactured and so worthless as to destroy the crop and render it entirely worthless,' then I charge you, you say: 'We find for the defendant.' If you should find, on the contrary, that the damage to the crop was not done by the fertilizer, then you should find a verdict for the plaintiff for $567.75." It will thus be seen that the issue presented by the *pleadings* was correctly stated to the jury. Under the issue framed by the pleadings (which was sustained by the admissions of the defendant), it was the duty of the jury, in any event, to render a verdict in favor of the plaintiff for the value of the thirteen tons of kainit, and it was error on the part of his Honor, the Circuit Judge, for the foregoing reasons, not to have granted a new trial.

The second exception is as follows: "II. His Honor erred and committed abuse of discretion in not setting aside the verdict and granting a new trial on plaintiff's motion, in that

there was a total absence of testimony to support it. (a) Because there was no testimony going to show that the fertilizer was manufactured with gross negligence or want of skill, or that it was of no advantage to the crop, or that it destroyed defendant's crop, nor was there any evidence of failure of consideration. The only testimony relied on by defendant was the testimony of witnesses going to·show that after the fertilizer was used under certain conditions, an injurious effect took place in point of time, without offering any testimony to show that the fertilizer was the cause of the effect in question, and thus ignoring entirely the law of cause and effect. There being no evidence, it was not in the discretion of his Honor to refuse a new trial, but the same should have been given plaintiff as a matter of right. (b) Because, while there was no testimony going to prove defendant's contention, plaintiff offered overwhelming testimony proving the cause of the damage to defendant's crop, and that defendant's contention was against natural law and scientifically impossible. (c) Because it was the duty of the Court to give full recognition to the laws of nature, and permit no verdict to stand which involved a denial of a law of nature as generally accepted as the law of gravitation, and which as a result accredited plaintiff corporation with the power belonging only to God, of originating animal life or the life principle by a composition of chemicals." In the first place, this Court is satisfied that the second ground of the motion for a new trial was properly overruled, for the reasons stated by the Circuit Judge. We desire, also, to quote from the case of *Going* v. *Insurance Co.,* 58 S. C., 213-4, 37 S. E. R., 228, which is in point: "The rule, as we understand it, is that where, as in the cases of *Dent* v. *Bryce,* 16 S. C., 4, and *Thompson* v. *Lee,* 19 S. C., 489, the Judge directs a verdict, and the jury disregards such direction and find a verdict contrary to that directed, then it is the duty of the Circuit Judge to set aside the verdict and grant a new trial; and if he refuses so to do, then there is such error of law as this Court may correct. But

where, as in this case, the jury were instructed that if from the testimony they believed a certain fact or series of facts, then their verdict should be for the plaintiff or defendant (as the case may be) ; but if from the testimony they did not believe such fact or series of facts, their verdict should be the other way, then a motion for a new trial presents a question for the discretion of the Circuit Judge, with which this Court has no power to interfere. It cannot properly be said that there was no dispute as to the material facts of this case." This exception is overruled.

The defendant served notice that he would ask this Court, if unable to sustain the order of the Circuit Judge refusing the motion for a new trial on the grounds upon which he rests his conclusion as therein stated, that the said order and judgment be sustained on the following grounds:

"I. Because, although defendant could not set up a counter-claim proper in this special proceeding, yet, by way of defense, he testified without objection on the part of the plaintiff, the question being if anything was due upon the lien, that he had been damaged by reason of his agreement and the fertilizers furnished $10,000, and had been subjected to other losses, all of which testimony was before the jury, and they had a right to consider same in reaching a verdict as against the price of the kainit, to wit: the sum of $176.50, and thereby find a verdict for the defendant.

"II. Because the lien was taken by McCall, and the undisputed testimony was that the advances were made by the Virginia-Carolina Chemical Company, and the lien was transferred to them after all advances had been made; and, therefore, McCall had no lien, because he had made no advances; and the Virginia-Carolina Chemical Company had none, because it had no paper when it made the advances, and only acquired a paper, which was not signed by it, after the advances were made. Hence the verdict should have been for the defendant.

"III. Because the contract to make advances for agricul-

tural purposes was not assignable by the lienee until he had made the advances contracted for; hence there could be nothing due on the lien to the plaintiff, and the verdict should have been for the defendant on the issue made." Additional grounds in a law case urged in support of a judgment entered upon the verdict of a jury necessarily convey the idea that there was error either on the part of the Circuit Judge or the jury in the rendition of the verdict. They partake of the nature of an appeal for the purpose of sustaining the judgment upon rights denied the respondent on the trial of the case. If they do not partake of the nature of an appeal, they present mere arguments for sustaining the judgment. Even if there was error prejudicial to the respondent, it cannot be relied on as a ground for *sustaining* the judgment of the Circuit Court. This question has so recently been considered in the case of *Lewis* v. *Hinson,* 64 S. C., 571, that we deem it only necessary to cite that case as authority for this proposition. There are other reasons why the additional grounds cannot be sustained, but we do not deem it necessary to state them.

It is the judgment of this Court, that the judgment of Circuit Court be reversed, and the case remanded to that Court for a new trial.