THE STATE OF SOUTH CAROLINA

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Jean E. Cooksey Appellant,
v.
Wachovia Bank, N.A. Respondent.
 
 
 

Appeal From Spartanburg County
Roger L. Couch, Circuit Court Judge

Unpublished Opinion No. 2006-UP-399
Submitted December 1, 2006  Filed December 7, 2006

AFFIRMED

 
 
 
James J. Raman, of Spartanburg, for Appellant.
Thomas E. Lydon, of Spartanburg, for Respondent.
 
 
 

PER CURIAM:  Jean E. Cooksey (Cooksey) appeals the circuit courts order granting a directed verdict for Wachovia Bank, N.A. (Wachovia).  We affirm.[1]
FACTS
As early as May 2002, Cooksey maintained a personal checking account with Wachovia.  This account was primarily funded through Social Security benefits deposited into the account on a monthly basis via direct deposit.  In addition to the Social Security funds, Cooksey occasionally made other deposits into the account.  Along with the above-mentioned personal checking account, Cooksey maintained a Wachovia joint checking account with her husband.  Overdraft protection was provided to this joint checking account through a Ready Reserve account Wachovia provided the couple. 
The Ready Reserve account was not paid according to its terms and was ultimately charged off by Wachovia.  To recover this debt, Wachovia offset Cookseys personal checking account by the amount owed.  As a consequence of the offset and the resulting lower balance in her personal checking account, several checks written by Cooksey were returned for insufficient funds.  These bounced checks caused her to incur various penalties and fees from Wachovia and several of the checks named payees.
From May 20, 2002 through June 17, 2004, a total of $18,722.00 in Social Security benefits was deposited into Cookseys personal account.  Deposits other than Social Security totaled $7,520.52, bringing the total for all deposits to $26,242.52.  During this approximately two-year period, Cooksey wrote checks on her Wachovia account totaling $18,805.43, leaving a remaining balance of $7,437.09.  
The offset to the Ready Reserve took place on May 19, 2004 and was for the sum of $5,188.76.  This amount, which was less than the net remaining balance, was approximately $2,000 less than the non-Social Security deposits made by Cooksey into her personal checking account.  Phrased differently, the total of the non-Social Security funds deposited into Cookseys checking account during the two years prior to the offset exceeded the amount offset by Wachovia.  
Cooksey brought this action alleging wrongful dishonor and wrongful offset.  The underlying basis for the claims is that Wachovia did not have the right to offset Cookseys account because the funds in the account were received from Social Security benefits.  At trial, upon the conclusion of Cookseys case, Wachovia moved for a directed verdict, which the judge granted.  
STANDARD OF REVIEW
[O]nly where there is no evidence to support the ruling, or where the ruling in controlled by an error of law should an appellate court overturn the grant of a directed verdict.  Hinkle v. Natl Cas. Ins. Co., 354 S.C. 92, 96, 579 S.E.2d 616, 618 (2003).  Essentially, our court must resolve whether it would be reasonably conceivable to have a verdict for a party opposing the motion under facts as liberally construed in the opposing partys favor.  Huffines Co., LLC v. Lockhart, 365 S.C. 178, 188-189, 617 S.E.2d 125,130 (Ct. App. 2005) (internal citations omitted).
DISCUSSION
1. The Grant of the Directed Verdict
Cooksey contends that the trial court improperly granted the motion for a directed verdict at the conclusion of Cookseys case, because Wachovia had not yet presented evidence of affirmative defenses.  However, the trial judges ruling was not in response to any of Wachovias affirmative defenses, but was instead because Cookseys legal theory, that the Social Security funds deposited in her checking account were exempt from offset, was incorrect.  Additionally, the trial court found the evidence established that, even if such benefits were exempt, there were sufficient non-exempt funds deposited into Cookseys account to cover the offset sum.
Furthermore, even if the trial courts ruling was based on affirmative defenses, there is nothing that prevents a defendant from proving such defenses through witnesses and evidence presented by the plaintiff.  While it is well settled that the party asserting an affirmative defense bears the burden of establishing that defense through a preponderance of the evidence, Lorick & Lowrance, Inc. v. Julius H. Walker & Co., 153 S.C. 309, 318, 150 S.E. 789, 792 (1929); see also 61A Am. Jur. 2d Pleading § 298 (1999), a directed verdict may be granted based on an affirmative defense at the conclusion of the plaintiffs case without requiring the defendant to prove the defenses through its case-in-chief.  See Eargle v. Sumter Lighting Co., 110 S.C. 560, 566, 96 S.E. 909, 911 (1918) (We have held in numerous cases . . . a nonsuit should have been granted at the conclusion of the plaintiffs testimony . . . .).  Evidence of an affirmative defense is not limited to that which is presented by the party asserting the defense.  See id. (It is immaterial from whose witnesses--whether plaintiffs or defendants--the evidence in support of an element of damage or of the cause of action or defense may come.  Either party has the right to make out or strengthen its case or defense on the examination of the witness of his adversary.).  
Accordingly, the trial court properly granted Wachovias motion for a directed verdict at the conclusion of Cookseys case, without requiring Wachovia to present its defense.
2. Offset Against Funds
Cookseys claim for wrongful dishonor and wrongful offset is predicated on the theory that Social Security benefits are exempt from offset under state and federal law.  She contends the funds in her checking account were not subject to offset because they were comprised, at least in part, of her Social Security income.  However, the statutes that protect such benefits from attachment, levy and garnishment do not apply to protect these funds from offsets.  
South Carolina recognizes a common law right of offset.  Lee v. Marion National Bank, 167 S.C. 168, 166 S.E. 148 (1932).  If a depositor is indebted to his bank, the bank has the right to offset the indebtedness by the depositunless there are conditions or agreements attending the deposit which preclude it.  Lee, 167 S.C. at 200, 166 S.E. at 160.  
With regard to the protection afforded Social Security benefits under federal law, the United States Code provides that the right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.  42 U.S.C. § 407(a) (1998).  In interpreting the extent of the protection provided by this statute, the United States Supreme Court, in Washington State v. Keffeler, 537 U.S. 371, 123 S.Ct. 1017 (2003), construed this statute very narrowly.  
In Keffeler, the state of Washington provided foster care to certain children removed from their parents custody and received Social Security benefits as the representative payee for many of those children.  Keffeler filed a class action, alleging, inter alia, that the states use of benefits to reimburse itself for the foster case costs violated 42 U.S.C. § 407(a).  The Supreme Court held that attachment, levy, or other legal process contemplates the utilization of some judicial or quasi-judicial mechanism and that neither the states effort to become a representative payee, nor its use of Keffelers Social Security benefits when it acted in that capacity, amounted to employing an execution, levy, attachment, garnishment, or other legal process under § 407(a).  Because the states activities did not involve any of the specified formal procedures, such as execution, attachment, levy, or garnishment, the issue was whether the states actions constituted other legal process.  The court reasoned that the statute uses that term restrictively, and under the established interpretive canons of noscitur a sociis and ejusdem generis, where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar to those enumerated by the specific words.  Keffeler, 537 U.S. 371, 372, 123 S.Ct. 1017, 1019.  Thus, other legal process should be understood to be a process much like execution, levy, attachment, and garnishment.  At a minimum, it would require utilization of some judicial or quasi-judicial mechanism by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability. 
South Carolina law provides a similar protection for Social Security benefits, stating that Social Security benefits are exempt from attachment, levy, and sale under any mesne or final process issued by any court or bankruptcy proceeding . . . .  S.C. Code Ann. § 15-41-30(10)(a) (2005).  However, like its federal counterpart, the statute does not provide protection from offset.  The reasoning and analysis of the United States Supreme Court in Keffeler can be applied to the South Carolina statute.  Nothing in Section 15-41-30 addresses the issue of offsets.  Instead, the state makes reference only to a process issued by any court or bankruptcy proceeding . . . .  The law is clearly directed only to judicial mechanisms for the collection of debts.  Thus, there is no basis for Cookseys contention that Social Security benefits are protected from offset.
Absent a statute or other law or regulation that prohibits offsets against funds received from Social Security, Cookseys claims of wrongful setoff and wrongful dishonor fail as a matter of law.
3. Non-Social Security Deposits Exceeded the Amount Offset
The total amount of funds deposited into Cookseys checking account from sources other than social security exceeded the amount of offset.  As such, Cooksey cannot show the offset that occurred was against the social security benefits and not the funds from other sources.  As reflected in the exhibits presented by Cooksey at trial, the total of the non-Social Security funds deposited into her checking account during the approximately two-year period prior to the offset exceeded the amount offset by Wachovia.  During this time, a total of $18,722.00 in Social Security benefits was deposited into Cookseys account.  Deposits other than Social Security totaled $7,520.52, so that the total of all deposits was $26,242.52.  
Throughout this two year period, Cooksey wrote checks on her Wachovia account totaling $18,805.43, leaving the remaining balance $7,437.09.  The amount of the offset was $5,188.76.  This amount was substantially less than the non-Social Security deposits she made and was less than the net balance remaining in her account.  Therefore, even if Cookseys Social Security benefits were exempt from offset, her checking account contained sufficient deposits from other sources to cover the offset.  As a result, Cooksey did not present facts to support her claims of wrongful offset and wrongful dishonor.
CONCLUSION
The evidence presented by Cooksey was insufficient to establish the causes of action alleged and thus supports the directed verdict award.  Likewise, Cookseys legal theory underlying her claims was incorrect, and the trial judge correctly ruled on the legal issues in granting Wachovias motion. Moreover, the evidence presented at trial established that she deposited funds from sources other than Social Security that exceeded the amount of the offset.  Therefore, neither a legal nor factual basis for the claims against Wachovia existed.  The trial courts ruling correctly granted a directed verdict in favor of Wachovia and accordingly is 
AFFIRMED.
ANDERSON, HUFF, and WILLIAMS, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.